# EXHIBIT 1

Approved, SCAO

| Original - Court | 2nd copy - Plaintiff |
| 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN<br>30th JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>18-531-CD |

Court address: 313 W. Kalamazoo Street, Lansing, Michigan 48933

Court telephone no.: 517-483-6500

**Plaintiff's name(s), address(es), and telephone no(s).**
Cheryl Fritze
2207 White Owl Way
Okemos, Michigan 48864

v

**Defendant's name(s), address(es), and telephone no(s).**
NEXSTAR BROADCASTING INC. and
NEXSTAR MEDIA GROUP, INC. (d/b/a WLNS-TV)
Resident Agent: CSC-Lawyers Incorpating Service Co.
601 Abbott Road
East Lansing, Michigan 48823

**Plaintiff's attorney, bar no., address, and telephone no.**
Michael R. Behan (P45121)
Schram, Behan & Behan
4127 Okemos Road, Suite 3
Okemos, Michigan 48864
Phone: 517-347-3500

**SUMMONS** NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued: AUG 0 9 2018 | This summons expires: NOV 0 8 2018 | Court clerk: LINDSEY LUBAHN |

**Family Division Cases** (The following is information required in the caption of every complaint and is to be completed by the plaintiff.)
☐ This case involves a minor who is under the continuing jurisdiction of another Michigan court. The name of the court, file number, and details are on page ____ of the attached complaint.
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**Civil Cases** (The following is information required in the caption of every complaint and is to be completed by the plaintiff.)
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**VENUE**
| Plaintiff(s) residence (include city, township, or village): Ingham County, Michigan | Defendant(s) residence (include city, township, or village): Ingham County, Michigan |
| Place where action arose or business conducted: Ingham County, Michigan |

| 08-09-2018 | /s/ Michael R. Behan (P45121) |
| Date | Signature of attorney/plaintiff |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (6/17) **SUMMONS AND COMPLAINT** MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

STATE OF MICHIGAN

IN THE INGHAM COUNTY CIRCUIT COURT

| CHERYL FRITZE | Case No. 18 - 531 - CD |
|---|---|
| Plaintiff, | Hon. Visiting Judge |
| v. | |
| NEXSTAR BROADCASTING, INC. and NEXSTAR MEDIA GROUP, INC. (d/b/a WLNS) | |
| Defendants. | |

Michael R. Behan (P45121)
SCHRAM, BEHAN & BEHAN
*Attorneys for Plaintiffs*
4127 Okemos Road, Suite 3
Okemos, Michigan 48864
Phone: 517-347-3500

NO CIVIL ACTION BETWEEN THESE PARTIES OR OTHER PARTIES ARISING OUT OF THE SAME TRANSACTION OR OCCURRENCE HAS PREVIOUSLY BEEN FILED.

## COMPLAINT AND JURY DEMAND

### Jurisdiction and Venue

1. Plaintiff, Cheryl Fritze, at all times pertinent to this litigation maintained a residence in Ingham County, currently residing at 2207 White Owl Way, Okemos, Michigan 48864.

2. Upon information and belief, Defendants operate, a local affiliate of Nexstar Broadcasting, Inc. and Nexstar Media Group Inc. (WLNS), headquartered at 545 John Carpenter Fwy, Suite 700, Irving, Texas 75062, but operating from 2820 East Saginaw Street., Lansing, Michigan 48912.

3. Upon information and belief, the resident agent for Defendants is CSC-Lawyers Incorporating Service Company, 601 Abbott Road, East Lansing, Michigan 48823.

4. The employment agreement between Plaintiff and Defendants was executed at Defendants' Lansing address in Ingham County and Defendants' unilateral decision to terminate the employment agreement was communicated at the same Lansing address in Ingham County.

5. The events creating this cause of action all transpired in the State of Michigan, the amount in controversy exceeds Twenty Five Thousand Dollars($25.000.00), and Plaintiff seeks both equitable and legal relief in this matter.

6. Plaintiff initiates this cause of action under the Michigan Whistleblower Protection Act, P.A. 469 of 1980; MCLA 15.361, et, seq. (WPA).

7. According to MCLA 15.361, a civil action claiming WPA protections may be filed in the county where the complaining party resides.

8. The complaining party in this case resides in Ingham County.

9. Jurisdiction over this matter exists in the State of Michigan.

10. Venue in this matter properly exists in Ingham County, Michigan.

## General Allegations

11. Defendants own and operate a licensed television broadcast station, offering a variety of news programming to the public.

12. A portion of the news programming exposed countless episodes of inappropriate sexual behavior perpetrated in the Lansing area.

13. Working as an important participant in the news programming during her decades long and illustrious career, plaintiff began her most recent position with WLNS as its news assignment editor in 2013.

14. Plaintiff's position required her to interact closely with not only the permanent on-air news personnel, but also the college interns and management.

15. As both parties anticipated, the first year produced wonderful results and a glowing annual review of plaintiff's work.

16. Plaintiff's outstanding work continued throughout her employment, but the severe sexually inappropriate misconduct of male employees eroded plaintiff's relationship with defendant as management decided to protect the male employees.

17. When defendants failed to address the latest misconduct and inexcusable managerial support of the offending male employee, defendant corporation elected to terminate plaintiff's employment with a letter and accompanying separation agreement.

18. At no point inclusive of the current date has plaintiff expressed any desire to extinguish her employment with defendant. To the contrary, she unequivocally desires that defendant reinstate her employment.

19. Defendants provided no justification for terminating the employment relationship other than the allegiance to managerial employees who protected the sexually inappropriate behavior of male employees to the detriment of the WLNS group and the corporation.

### Specific Allegations

20. Plaintiff re-alleges and incorporates the allegations in paragraphs 1-19 in this complaint.

21. In 2014, plaintiff initiated a complaint concerning the sexual harassment of female employees by the male news anchor, Evan Pinsonnault.

22. Plaintiff learned that the harassing behavior existed before her employment in 2013.

23. Two female college interns told plaintiff about similar incidents involving Evan Pinsonnault.

24. The first student stated that Evan took her to lunch, purchased alcohol, and asked to go to the intern's apartment.

25. The second student discovered Evan repetitively watching a news clip of her to the point that she was uncomfortable.

26. Plaintiff reported Evan's behaviors to management, but management refused to take any action.

27. Following months of sexually inappropriate behavior, management finally severed Evan's employment, but then started an adversarial relationship with plaintiff.

28. Despite plaintiff's clear and forceful rejection of sexually inappropriate behavior, even management started displaying sexually inappropriate behavior.

29. One incident involved a multitude of degrading behaviors surrounding reporting on the "Fifty Shades of Grey" book series. Because of the involvement of plaintiff's direct supervisor, plaintiff reported the incidents to the station manager.

30. In a different incident, another female intern complained about plaintiff's supervisor's, Jam Sadar's, sexual harassment.

31. Because new corporate guidelines provided directions for reporting, plaintiff followed the new procedures.

32. After months of inaction, and in absolute contravention of the assurance of anonymity, the station manager flaunted the written report that concluded no violations of any policy occurred by waving the report in plaintiff's face.

33. Disgusted with defendant's inaction, plaintiff wrote a letter to Perry Sook at corporate headquarters and asked an attorney for legal assistance regarding remedies for the sexually inappropriate behaviors.

34. Plaintiff's attorney opined that plaintiff's civil case would be difficult, but that the attorney could make defendant's life miserable for the mistreatment of the female employees.

35. Plaintiff responded that she strongly desired anything that would stop the misconduct.

36. Plaintiff then shared a Facebook post from the attorney that directly chastised members of WLNS management, including the station manager, which resulted in protection of an alleged sexual predator.

37. Within weeks, corporate management sent representatives from Texas to "check the climate" at WLNS.

38. Plaintiff provided the names of 12 different employees who experience similar mistreatment at WLNS. After contacting only three employees, defendant again concluded that the station did not have any sexual harasment problem.

39. With the knowledge that plaintiff engaged the assistance of counsel seeking to expose the illegal harassment of WLNS female employees and plaintiff's refusal to accept defendant's inaction.

## COUNT I - WRONGFUL DISCHARGE AGAINST PUBLIC POLICY AND IN VIOLATION OF THE MICHIGAN WHISTLE-BLOWER PROTECTION STATUTE

40. Plaintiff incorporates by reference paragraphs 1-39.

41. Plaintiff, Cheryl Fritze, was discharged from her employment with defendants, Nexstar Media Group, Inc. and Nexstar Media Group, Inc., as specific retaliation and as the direct and proximate cause of her engaging in activities protected by Michigan Law.

42. She identified unlawful sexual harassment of multiple female coworkers, reported the harassment to every member of the designated reporting chain, including the CEO of the corporation, Perry Sook.

43. Despite numerous attempts to utilize defendant's reporting protocols for sexual harassment, defendant failed to address the issues and authored reports concluding that no issues existed.

44. Plaintiff identified a local attorney who agreed to assist plaintiff with redress outside the workplace processes.

45. Plaintiff's attorney issued a very public statement chastising Jam Sadar and Robert Simone for their active role in perpetuating sexually abusive behaviors.

46. Plaintiff alerted Robert Simone and Jam Sardar to her attorney's statement.

47. Plaintiff provided the corporate office with names of 12 employees who would confirm the abuses at WLNS.

48. In response, Nexstar interviewed 3 of the 12 employees before concluding again that no problems existed.

49. Predictably, defendant attempted to silence plaintiff and future protesters of sexual abuses by terminating plaintiff's employment on May 14, 2018.

50. Defendants, through various agents of the Defendants have violated the Michigan law by engaging in the following conduct and conspiring to engage in the following conduct:

    (a) retaliating and discriminating against the plaintiff because she opposed violations of Michigan law;

    (b) retaliating and discriminating against the plaintiff because she sought the assistance of counsel to alert the appropriate authorites of defendant's violations of Michigan law;

    (c) conspiring to aid, abet, incite, compel, and coerce a violation of Michigan law;

    (d) willfully obstruct or preventing the plaintiff from complying with Michigan law;

    (e) coercing, intimidating, threatening and interfering with the plaintiff's rights under Michigan law;

NOW WHEREFORE, plaintiff Cheryl Fritze, hereby demands that she be compensated monetarily by defendant in an amount in excess of Twenty Five Thousand Dollars ($25,000) to reflect the harm the defendants wrongful actions and allegations have done to both the plaintiff's professional and personal life.

Dated: August 9, 2018

Michael R. Behan (P45121)
Attorney for Plaintiff

## JURY DEMAND

NOW COMES, the above named plaintiff, Cheryl Fritze, who hereby demands a trial by jury regarding all proceedings in this case.

Dated: August 9, 2018

SCHRAM, BEHAN & BEHAN
*Attorneys for Plaintiff Campbell*
By:
Michael R. Behan (P45121)